Baldwin, J.
In order to determine whether the Circuit court erred in overruling the defendant’s demurrers to the several counts of the plaintiff’s declaration, it is necessary to ascertain in the first place, whether the case falls within the influence of the 8th section of the act to suppress duelling. Supp. Rev. Code 284.
That section provides that, “ All words which, from their usual construction and common acceptation, are considered as insults, and lead to violence and breach of the peace, shall hereafter be actionable, and no plea, exception or demurrer, shall be sustained in any Court *538 within this Commonwealth, to preclude a jury from passing thereon, who are hereby declared to be the sole judges of the damages sustained : Provided that nothing herein contained shall be construed to deprive the several Courts of the Commonwealth from granting new trials as heretofore.”
The common law does not give reparation for all derogatory or disparaging words. To make such words actionable, unless special damage be shewn, they must impute some offence against the law, punishable criminally ; or the having a contagious disorder tending to exclude from society; or which may affect one injuriously in his office or trust, or in his trade, profession or occupation; or which, in the case of a libel or written slander, tend to make the party subject to disgrace, ridicule or contempt. Words spoken that are merely vituperative, or insulting, or imputing only disorderly or immoral conduct, or ignoble habits, propensities or inclinations, or the want of delicacy, refinement or good breeding, are not regarded by the common law as sufficiently substantial to be treated as injuries calling for redress in damages. Thus it is not actionable to call a man a villain, cheat, rascal, liar, coward or ruffian; to accuse him of swearing falsely, unless in a judicial proceeding ; to charge him with a base or fraudulent act, or with having been guilty of adultery, seduction, or debauchery; or a woman with vulgarity, obscenity or incontinence; where such defamation bears only on the feelings or general standing or reputation of the party implicated, and the misconduct imputed has not been made punishable by statute.
It is moreover essential at common law, to the action for defamation, that the words, whether spoken or written, be false and malicious. If false, and the words be actionable in themselves, the law implies malice, which is open to evidence of aggravation on the one hand, and of mitigation on the other, and may be repelled altogether in some cases by the occasion of uttering them, *539 as in certain confidential communications, unless express malice be proved. But if the words be true, however malicious, they are not in the eye of the law injurious, and the truth of them may be pleaded and proved in bar of the action.
What amounts, therefore, to defamation at common law is, for the most part, a question of law, and may be presented to the consideration of the Court, by “ plea, exception or demurrer.”
Duelling received no indulgence whatever from the common law, which treated its conventions and chivalry as solemn mockeries, and its violence and bloodshed as the results of deliberate malice. But these denunciations were resisted by long cherished prejudices of society, which appealed with dreadful success to some of the strongest principles of human conduct, the pride of character, the fear of humiliation, and the love of distinction. At length, a humane cunning of legislation, resorted to the source of the mischief, and invoking the same principles of action, sought to direct the very cause of the evil to the extirpation of its effect. The statute to suppress duelling was passed, which leaving unmitigated the rigours of the common law, enacted provisions unusual to our criminal jurisprudence, and warranted only by the peculiar exigencies of the subject. By this law its culprits are debarred from the halls of legislation, the seats of justice, the executive magistracy, all offices of honour and emolument; and the disfranchisement is accomplished, without the aid of prosecution, by the self-imposed sentence of the offender, exacted by the unavoidable alternative of incurring the guilt and shame of perjury.
The heavy disfranchisement, the inquisitorial and test oaths, and other extraordinary provisions of the statute, are accompanied by the section above quoted, extending the redress for defamatory words to provocations of that nature not before actionable : the Legislature thus seek *540 ing, as far as practicable by pecuniary reparation, to remove a supposed apology for duelling. But in thus leaving the ancient landmarks of slander, and adventuring into unexplored regions of defamation and contumely, the injuries by derogatory words contemplated, could not in the nature of things be treated as questions of law. Insults by words spoken to or concerning another, depend so much upon the manner, the occasion, the allusions, and peculiar circumstances, as to defy all rules of technical precision and import, and must of necessity be regarded as questions of fact, to be submitted to the experience, the observation and the common sense of a jury. Accordingly, the statute expressly provides that no plea, exception or demurrer shall be sustained, to preclude the jury from passing upon the words, and declares that they shall be the sole judges of the damages sustained.
It follows that in actions founded upon the statute, a demurrer to the declaration or the evidence, will not lie, on the ground that the words are not insulting; nolis a plea of justification admissible on the ground that though insulting, they are true : for in either case the jury would be prevented from passing upon the import, intent and effect of the words, which would be against the plain meaning of the statute. It was obviously contemplated by the Legislature that the jury should determine in the first place, whether the words were insulting or not, and in the next place, if insulting, what damage to the plaintiff was occasioned thereby; subject only to' the power of the Court to grant new trials. And as regards the truth of the words in bar of the action, it by no means follows that they are not insulting, because they are true: indeed, the whole force and sting of them may sometimes be derived from their truth, as where one is reproached with an obvious bodily or mental imperfection, or with a well known stain upon the reputation of a near relative, or with a *541 notorious disgrace which he has himself incurred. This was well expounded in Brooks v. Calloway, 12 Leigh 466 ; in which it was held, that a plea of justification cannot be received m an action tor insulting words, under the statute to suppress duelling.
We have thus important points of difference between actions of slander at common law, and actions for insults under the statute: and there is another, as I conceive, of not less importance.
In the action for defamation at common law, the truth of the words is not merely a mitigation of damages : it is something more; and serves to shew that the plaintiff has in the eye of the law sustained no damage; for any prejudice that he has suffered is imputable, not to the speaking or publication of the words, but to the fact itself which they indicate. And there is no reason why the defendant may not direct that defence to the amount instead of the defeat of the plaintiff’s recovery, by giving it in evidence under the general issue, instead of pleading it specially; except that his doing so would tend to surprise the plaintiff, who in consequence of the defendant’s declining to plead in bar, has not only no notice of such a defence, but no reason to expect it. The objection, therefore, to the truth in mitigation of damages, arises not out of the nature of the evidence, but the form of the pleadings; and it is upon the latter principle it has been established by the leading case of Underwood v. Parks, 2 Strange 1200, and the subsequent authorities.
Hence, too, the difficulty of the question which has often occurred, and upon which there has been much conflict of decision, both in the English and American courts, whether facts and circumstances tending to prove, but falling short of establishing, the imputation against the plaintiff, may be given in evidence, as grounds which led the defendant to the belief of its truth, or as indicating that the damage to the plaintiff *542 proceeded from his own conduct rather than from the speaking or publication of the words by the defendant. See the cases cited in 3 Steph. N. P. 2255-6, 2253, 2579 ; 2 Stark. Evi. 877-8; Stark. Sland. 405-6 ; and the judgments of this Court in Cheatwood v. Mayo, 5 Munf. 16, and M’Alexander v. Harris, 6 Munf. 465. The objection to such evidence plainly rests upon the ground, that if facts tending to prove the truth of the charge, were admitted under the general issue, in mitigation of damages, it would be impossible to draw the line and stop short of actual conviction. 2 Stark. Evi. 878. Facts tending to prove the plaintiff’s guilt, are of course proper under the plea of justification, and if the defendant has also put in the general issue, there is no reason why, when before the jury, they may not be considered by them in mitigation of damages: and it has been so held. 3 Steph. N. P. 2252-3 ; Chalmers v. Shackell, 6 Car. & P. 475; Wilmett v. Harmer, 8 Id. 695.
The statute, in giving the action for insulting words, looks to the substantial justice of the case, and to that end removes the obstacles of demurrers and special pleas, in order that the whole merits may be submitted to the consideration of the jury, under the general issue. In deciding for the plaintiff, the jury must assess the damages he is to recover, and in doing so, they have of necessity to look, not only to the nature, degree and tendency of the insult, but also to the circumstances of aggravation on the one hand, and of mitigation on the other. Now it cannot be doubted, as a general proposition, that the truth or falsehood of the insulting words, has a strong bearing upon the quantum of damages.
And the statute in nowise declares that the truth of the words shall not be admitted in evidence in mitigation of damages, but on the contrary, that the jury shall not be precluded by demurrers or pleas from passing upon the words, and that they shall be the sole judges *543 of the damages; the plain meaning of which is, that they shall decide the whole cause without being trammelled in regard to evidence by forms of pleading. The very reason why the truth of the words cannot be given in evidence under the general issue, in actions for defamation at common law, serves to shew that it is admissible in actions founded upon the statute: for in the former, it may be brought into the evidence by special pleading, so as in effect to mitigate the damages to nothing, if I may so speak : while in the latter, it cannot be specially pleaded, and ought, therefore, to be brought into the evidence by the general issue, not to preclude all damages, but merely excessive damages. In fact, at common law, matters of defence which cannot be pleaded, may for that reason be given in evidence in mitigation of damages, as the proceedings at a coroner’s inquest. 3 Steph. N. P. 2580; East v. Chapman, 2 Car. &. P. 570.
Indeed, the construction of the statute in this respect, resolves itself into this: whether the Legislature designed that the truth shall be no mitigation for the of-fence of speaking it; and whether a party who has been guilty of misconduct, may not only sue any one who exposes it, but recover as high and exemplary damages as if he were innocent and the imputation false. The affirmative construction would be a bounty to profligacy, and render a bad name a source of profit; and the greater the misconduct of a party which has given rise to the imputation, the higher would be his claim of damages.
A good writer, in speaking of the justification of a libel, (which is in effect a written insult,) says: “ The ground of the action on the case for a libel, is the quantum of injurious damage which the person libelled either has, or may be presumed to have sustained from the libellous matter. It is evident, therefore, that if the subject of the libel, both in its substance and measure, *544 be truly imputed to the plaintiff, that there can be no such injurious damage. The reputation cannot be said to be injured where it was before destroyed. The plaintiff has previously extinguished his own character. He has, therefore, no basis for an action to recover compensation for loss of character and its consequences. The law considers him as bringing an action of damage to a thing which does not exist. Least of all will it allow such a person, lucrari ex mala fama, to make a profit of his bad fame. The law, moreover, has herein a kind of moderate and prudent regard to the interests of society, which are, in some degree, upholden by the awe and apprehension which bad men entertain of public reproach.” Holt on Libels 280. These judicious remarks are quite as applicable to the extenuation by the truth, as to the justification of libels, or written insults, and of verbal insults, now that they are made actionable.
It cannot be denied that in actions on the statute, as well as at common law, the general bad character of the plaintiff is admissible in mitigation of damages; which bad character is of course derived from rumours in regard to particulars of his conduct; but the particular conduct which has led to the imputation in question is still better and safer evidence, and may be indispensable to supply the absence or correct the error of general character, which may have been negatively, or even positively, good until forfeited by the particular misconduct imputed.
The supposition that the truth of the insulting words is inadmissible in mitigation of damages, is derived from a misapprehension of the purpose and policy of that section of the statute which gives the action for defamation of that nature. It is not designed to operate as a penal enactment for the suppression of insults, because they lead to duelling. All the penal enactments of the statute are exhausted in the direct suppression of duel- *545 ling; and the civil action is given for reparation in pecuniary damages of a person aggrieved by an insult. The amount of the damages is, as in all other civil actions, to be measured by the prejudice sustained by the plaintiff; “ and they are awarded without regard to the penal correction of the defendant, or the reformation of his manners.” Stark. Sland. 162. The benefit to the community from the redress of civil injuries, is merely incidental and consequential, and not the immediate purpose; when treated as public wrongs, they are proceeded against by indictment or information. It would be a wild enterprise of legislation, to attempt the suppression of duelling by civil actions for provocations, prosecuted upon principles of criminal justice.
If such evidence be admissible upon the principles which belong to the subject, it can hardly be supposed that it ought to be excluded, because it might tend to surprise the plaintiff, from want of notice of the facts intended to be proved. Such an objection has never prevailed in cases where general pleading is allowed, and especially if required by law, unless where notice is prescribed by some statute or some rule of practice, and has not been given.
Whether a party aggrieved by a common law defamation, may waive proceeding upon it as such, and elect to treat it as an insult under the statute, is a question of much interest, which I shall not consider here. If he cannot, then he may be met on the trial by the objection that his action ought to have been for defamation at common law: and if the defamation be written, a further question may arise, whether the statute applies to insults in writing, which it is difficult to distinguish from common law libels. If on the other hand, he can waive the common law defamation, and sue for the insult, then it is obvious, if the defendant can neither plead the truth in justification, nor rely upon it in mitigation of damages, that in regard to *546 actions for defamation, the best members of society will be placed at the mercy of the worst, and that vice may stalk abroad in the community without fear and almost without reproach. But the construction of the statute in this respect, does not arise in the present case, it being clear that this is an action for defamation at common law.
If the foregoing views be correct, the truth of the insulting words is, in actions founded upon the statute, admissible in mitigation of damages, as a general rule. But it is a rule not free from exception. On the contrary, cases may doubtless occur in which, from their very nature, the truth of the words would be irrelevant, impertinent and scandalous. For example, if the insult to the plaintiff should consist in taunting him with some secret bodily infirmity, or with a stain upon the family honour, such as the disgrace of his father, or the lewdness of his wife or daughter, it is obvious that the only tendency of such evidence would be to gratify the malice of the defendant, and that, so far as pecuniary damages are concerned, his interest would be best subserved by proving the falsehood, instead of the truth of the imputation. And it is very clear, that it is competent for the Court to exclude evidence wholly irrelevant to the merits of the controversy, especially when absurd or indecent in its character, or wantonly offensive to the feelings and reputations of third persons.
What has been said will serve to shew that there are essential points of difference, affecting both the pleadings and the evidence, between the action for defamation founded upon the common law on the one hand, and that founded upon the statute on the other. The Legislature did not design to interfere with the common law doctrine and remedy, in anywise whatever, and they remain precisely the same as they were before the statute. A party aggrieved may still proceed at the common law as if the statute had never been made, or *547 he may avail himself of the statutory remedy when applicable to his case; but he cannot do both in the same count of his declaration, for that, if tolerated, would give rise to the utmost perplexity and confusion.
When, therefore, the plaintiff, on the face of his declaration, treats the grievance complained of as a common law defamation, he must be held to his own construction of the words, and required to make out such a case by his pleading and evidence; and if ho fails to do so, he cannot recover for an insult under the statute. If this were otherwise, then the effect of the statute would be to uproot the common law doctrine, pleadings and evidence in actions for defamation, as will be seen from a moment’s reflection. All common law defamations are insults, and many of them something more. Now if the plaintiff, though he declares for a common law defamation, may recover damages for an insult, the consequence is that there can be no demurrer to the declaration, the main, if not the whole purpose of which is to shew that the plaintiff, though he has attempted to make out a case which the common law recognizes as defamatory, has failed to do so. Another consequence is, that the defendant can in no case plead justification; for such a plea is not allowable in regard to insults, and if the plaintiff can declare for a slander and prove an insult, an issue upon the plea of justification, would upon the trial prove immaterial and idle. Again, in actions for common law defamation, if the plaintiff can recover for an insult, the defendant must, as a general rule, be permitted to prove the truth of the words, in mitigation of damages; that being so, as I think I have shewn, in regard to insults, I cannot think that the Legislature intended to introduce so radical and sweeping a change in the law of defamation. If they did, why was it left to implication, instead of an express provision abolishing demurrers and special pleas in all actions for defamations, and declaring that such *548 grievances shall stand upon the footing of insults. This Court did not give that construction to the statute, in Brooks v. Calloway, as will be seen from the opinion, and from the first count of the declaration, in which there was no statement or inuendo to shew that the plaintiff treated the words as imputing to him the crime of perjury.
It is obvious that one of two constructions must he given to the statute. The first is, that it was designed to abolish the common law doctrine of slander, and to place all defamatory words upon the footing of insults. And the consequence would follow, that where a person sues another for charging him with murder or theft, and declares as at common law, the defendant cannot justify by pleading the truth of the words. The other construction is, that the statute was not designed to abolish the common law doctrine of slander, but to allow actions for insulting words not before actionable: And the consequence, it seems to me, is that the plaintiff must observe the distinction in his declaration. He must declare either for a common law slander, or for insulting words under the statute ; and cannot declare for both, unless he does so separately in distinct counts of his declaration. If his declaration treats the words as slanderous, then the common law doctrine is applicable to it in the subsequent proceedings; and it is open both to a demurrer and a plea of justification. For if upon such a declaration, he can recover for a mere insult, then it follows that though a demurrer would, therefore, be inadmissible; yet that a plea of justification by the defendant must be treated by the plaintiff as in the nature of a demurrer by himself to his own declaration, inasmuch as it will be incumbent on him to shew, in objecting to such a plea, that though he has declared for a slander, the words in truth import merely an insult. This would be to confound all rules of pleading; and moreover, after the rejection of such a plea, on the *549 ground that the words in the declaration are only insults, the case would come before the jury on the general issue, with all the aggravation of the slanderous interpretation given to thorn in the declaration, an interpretation. which the jury could not be restrained from adopting.
It will be seen that in this case there is no reference in the declaration to the statute, no allusion to its remedial provision, and no adoption of any terms which it employs. On the contrary, the whole structure, form and language of the declaration, are those used habitually in actions for slander at common law; and the sense and meaning attributed to the defamatory words charged in the several counts of the declaration is, that the plaintiff was guilty of an offence punished criminally by law, to wit, the dealing with the slaves of others without the consent of their masters, or the harbouring them for that purpose, or with dishonesty in his profession or calling of overseer, by selling to the slaves of others, property belonging to his employer. The import so given to the words, it is true, is a forced one in each instance, but though that may render the declaration defective, it is still not the less a declaration at common law, and not upon the statute: and being so, it is open to demurrer. And this brings us to the question whether the demurrers to the declaration ought not to have been sustained.
Where the ground of defamation is, that the words impute to the plaintiff a criminal offence, or dishonesty in his profession or calling, it must be made to appear so. clearly and unequivocally, either upon the face of the words themselves, or if they do not necessarily express that meaning, any doubt that exists must be removed by proper averments in regard to the subject matter of the discourse. The meaning of the imputation cannot be left to inference or conjecture, or supplied by an inuendo, the office of which is to designate, *550 not to enlarge, the meaning of the words. The essentials of explanation are the averments of pre-existing facts, and the colloquium concerning them; the inuendo , is not essential, but only useful in rendering obvious that which was before sufficiently certain, the meaning of the defendant by those words, in that discourse, upon that subject. The inuendo is therefore a mere index to the result of what precedes it, and cannot be helped by bringing into it new matter not before stated. 3 Steph. N. P. 2568; 2 Chitt. Bl. B. 3, p. 95, n.; Hawkes v. Hawkey, 8 East’s R. 427; Van Vechten v. Hopkins, 5 John. R. 211, 220, 228; Harrison v. Stratton, 4 Esp. N. P. Ca. 218.
In Barham’s Case, 4 Co. Rep. 20, the action was for saying, “ Barham burnt my barn,” (inuendo, a bam full of corn;) and the action was held not to lie, because burning a barn, unless it had corn in it, was not felony.
A count in a declaration for slander, laid the words as follows: “You have robbed me of one shilling tan money;” and the inuendo explained as the meaning, that the plaintiff had fraudulently taken and applied to his own use one shilling received by him from the defendant, being the produce of some tan sold by the plaintiff for and as servant of the defendant; but the facts averred in the inuendo were not alleged by any independent averment in the declaration. It was held that the inuendo was bad, as introducing new matter, and that the count did not charge words actionable in themselves. 3 Steph. N. P. 2571; Day v. Robinson, 4 Nev. & Man. 884, 1 Adol. & Ell. 554.
Where a declaration in slander stated that the defendant said of the plaintiff, “ he has forsworn himself,” meaning that he had committed wilful and corrupt perjury ; it was held that the words not being actionable in themselves, because they did not necessarily imply that the plaintiff had forsworn himself in a judicial proceeding, their meaning could not be extended by an *551 inuendo. 2 Wheat. Selw. 345; Holt v. Scholefield, 6 T. R. 691.
In slander the plaintiff averred that he had in the usual manner put in his answer on oath, to a bill filed against him in the Court of exchequer by the defendant; but did not proceed to aver any colloquium respecting that answer; and then alleged that the defendant said to him, he was forsworn: inuendo, that the plaintiff had perjured himself in his aforesaid answer. It was held that without the aid of such a colloquium, the sense of the words could not be enlarged by referring them to the answer averred in the prefatory part of the declaration. 3 Steph. N. P. 2570; Hawkes v. Hawkey, 8 East’s R. 427, et vide Holt v. Scholefield, 6 T. R. 691.
If words be actionable because spoken of one in the way of his trade or calling, it must appear so from the words themselves or a colloquium. 4 Tyrw. R. 90.
There is no difficulty in the application of these principles to this declaration, consisting of three counts, to each of which there is a general demurrer.
In the first count, the words charged are, “that Turpin’s negroes were trafficking or trading with Moss, meaning the plaintiff, and they were carrying the bacon to the coal pits to sell;” without any averment or colloquium in regard to such trafficking or trading, or the subject thereof, or of the trade or employment of the plaintiff. And the inuendo is, “ that the said Moss (vaguely and parenthetically said therein to be his overseer and living -on his premises,) had wickedly, illegally and wilfully sold his the said Edward H. Moseley’s bacon, without his knowledge or consent, to William A. Turpin's negro slaves, without the authority or consent of their master, who were carrying the same to the coal pits to sell, and that the said Moss was in the habit of secretly and illegally trafficking with negro slaves.” It will be seen that this inuendo is wholly *552 unwarranted by what precedes it; and that the words charged, do not impute a criminal offence to the plaintiff, or dishonesty in his profession or calling.
In the second count, the words charged are, “ that a negro of Turpin’s had been seen coming from Moss’s at a late hour of the night, and that a negro had been seen going in his Moss’s, meaning plaintiff’s house, in the night time, when the candle was burning, but as soon as the negro went in, the candle was put out.” And these words, without any averment or colloquium of facts, are stated by the inuendo to mean, “ that the said John T. Moss was in the habit of receiving, harbouring and dealing with negro slaves not belonging to him, and particularly with the negro aforesaid.”
In the third count, the words charged, without any averment or colloquium of facts, are, “ that I, meaning the defendant, consider him, meaning the plaintiff, a damned scoundrel: I, meaning the defendant, consider his wife, meaning the plaintiff’s wife, the worst, the damndest of the two.” And the inuendo is, “ meaning thereby that the said John T. Moss was dishonest and untrustworthy in his calling and occupation as an overseer, and that the said John T. Moss and his wife had been guilty of the crime of unlawfully dealing and trafficking with slaves, and without his knowledge or consent, using and selling to them, his the said Edward H. Moseley’s bacon and other property, while in his employment as an overseer.”
My opinion is, that the Circuit court erred in overruling, instead of sustaining, the demurrers to the declaration ; and that the judgment ought to be reversed.
Allen, J.
The question whether the truth of words made actionable by the act concerning duelling, may be given in evidence in mitigation of damages, has ceased to be a matter of much practical interest, as it is understood the law, as recently revised, has placed all actions *553 of slander on the same footing, and permits the plea of justification, as well for words made actionable by the statute, as for slander at common law. But the same reasons which induced this Court, in Brooks v. Calloway, to hold that a plea of justification was not admissible in bar of actions founded on the statute, should, in my opinion, exclude such evidence when offered in mitigation of damages.
In the present case, the plaintiff has proceeded as for a common law defamation, and for the reasons assigned by Judge Baldwin, I think the demurrer to the declaration should have been sustained.
Daniel, J. concurred in the judgment.
Cabell, P. concurred fully in the opinion of Baldwin, J. -
The following is the judgment of the Court:
It seems to the Court, that the Circuit court erred in overruling the demurrers to the several counts of the declaration: And it is therefore considered that the judgment be reversed, with costs, and the verdict of the jury set aside : And that the cause be remanded to the Circuit court, with instructions to render judgment on said demurrers for the defendant there, unless the plaintiff there should, on leave obtained in that Court, amend his declaration; and if the declaration be amended, for such further proceedings as may be proper on such pleadings, as may be offered by either party and admitted by the Court.